## DERMONT *vs.* MAYOR, etc., of Detroit.

A Municipal Corporation is not liable, at the suit of an individual, for damages arising from the insufficiency, or defective construction, of a public sewer, where such damages result directly to the party injured, from his use of it for his private convenience.

The payment of a sum, annually, by an individual, for the purpose of draining into a public sewer, is evidence of a license only, and not of an undertaking and guaranty on the part of the City to furnish ample drainage for the premises of such person.

Error to Wayne Circurt.

This was an action on the case for injury done to merchandise stored in the plaintiff's cellar, by reason of the water from one of the public sewers of the City of Detroit flowing back through his private drain into the cellar. On the trial, the plaintiff proved the charter of the city creating the defendants a body corporate, together with several amendments thereto, and the several ordinances published by the defendants, and that in the City of Detroit sewers are built by general taxation, and not by special assessment, on the lots adjacent to the sewers. Also, that previous to 1849, the defendants constructed a grand sewer through Congress street, in said city, and in said year a store was erected on the corner of Woodward avenue and Congress street, which had ever since been occupied by plaintiff. That when said store was built, for the purpose of drainage, a private drain was made from the cellar thereof, and connected with said Congress street sewer; that the plaintiff paid annually, and the defendants received, the assessment fixed by the ordinances for the privilege of such construction; that between that time and May, 1853, the city made various extensions of the grand sewer, and also various lateral connections with it, whereby the quantity of water it was required to discharge was greatly increased. One large sewer coming down Woodward avenue was connected with it, at or near plaintiff's store. This connection was made at right angles; whereas, witnesses skilled in such matters testified, that it should have connected with a curve, to prevent back-water, and the deposit of sediment at the point of junction. During a storm in the spring of 1853, water flowed into the sewer beyond its capacity to discharge the same properly; the sewer was filled to overflowing, and, for the first time, the water was forced from the sewer through the plaintiff's drain into his cellar, and thereby his property was damaged.

Dermont *vs.* Mayor, etc., of Detroit.

The defendants gave evidence tending to show that the overflowing complained of was caused by an unusual and severe storm, and also, tending to show that the private drain was in a bad condition.

The Court charged the jury as follows : "That, conceding the utmost that was claimed by the plaintiff, that his cellar was of a proper elevation above the grand sewer ; that the drain from it had a proper fall ; that it was constructed with proper precautions against back water ; that it entered the grand sewer at the proper place, with the permission of the Common Council ; that the storm was not of such unusual severity that the possibility of its occurrence might have been anticipated by ordinary prudence and foresight ; and that the undue quantity of water in the grand sewer, on the occasion referred to, was caused either by the extensions or lateral connections made after 1849, or by the improper manner in which the Woodward avenue sewer was connected with it, or by these causes combined : I say, conceding all these things, I am of the opinion, that as a matter of law, although his case is certainly a hard one, the plaintiff is not entitled to recover. That the power of the Corporation to construct sewers for the draining of the city, from its nature, involves the exercise of discretion. Their determination in each case, requires that the wants and necessities of different portions of the city, the state of the city finances, and various other circumstances should be taken into consideration. So long as they act in good faith, without fraud, malice or oppression, and the execution of their plans creates no public nuisance, and involves no violation of private rights, the Corporation is civilly responsible to no one for the manner in which sewers are constructed, or for their failure to perform the functions for which they were designed. I think the plaintiff had no legal right to complete and perfect drainage from his cellar into the grand sewer. The Corporation are under no obligation which the law can recognize or enforce, to furnish drainage

to any citizen. They furnish such facilities for drainage as they deem practicable and expedient, and as the resources of the city may enable them to furnish; the cost being defrayed by general taxation. They permit private drainage into the city sewers when they deem it advisable; and their permission to any individual to enter the sewer with his drain, implies no undertaking, and creates no obligation on the part of the city to furnish ample drainage. The citizen takes the privilege of drainage, such as it is, and such as may thereafter be made, and for any injury to the property not directly, but through the use of the privilege of drainage, the Corporation are not responsible."

To which charge the plaintiff excepted, and the jury having rendered a verdict in accordance with the charge of the Court, the cause was removed to this Court, by writ of error and a bill of exceptions.

*W. Gray* and *C. I. Walker*, for plaintiff in error.

If Municipal Corporations, in the construction of their public works, fail to exercise good faith and ordinary skill and diligence, having reference to the importance of the interests at stake, they are liable for all damages which third persons suffer thereby. (*Bailey* vs. *Mayor, etc.,* 3 *Hill,* 538; *S. C.,* in error, 2 *Denio,* 450; *The Mayor, etc.,* vs. *Furze,* 3 *Hill,* 614; *Delmonier* vs. *The Mayor, etc.,* 1 *Sand.,* 222; *The Rochester White Lead Company* vs. *Rochester,* 3 *Comst.,* 463; *City of Buffalo* vs. *Holloway,* 3 *Seld.,* 497; *Ross* vs. *City of Madison,* 1 *Cart.,* 281; *Ib.,* 1 *Smith,* 98; *Rhodes* vs. *City of Cleveland,* 10 *Ohio R.,* 159.)

It does not help the defendants that the plaintiff received the injury " through the use of the privilege of drainage." (*Husdon* vs. *City of New York,* 5 *Sandf.,* 289.)

A class of cases has been referred to as analogous to this, where the property of individuals has been severely

damaged by the grading of streets and highways under authority of law, and yet where it has been held there is no remedy. Of this class is, The Governors *vs.* Meredith, 4 Term R., 794; Radcliff, Executor, *vs.* Mayor, 4 Comst., 193; Rounds *vs.* Mansfield, 2 J. R, 161. With the law of these cases rightly understood, we are content. They support our position. One of these cases was Leader *vs.* Moxon, 3 Wils., 466, S. C. 2 W. Blk., 924. It was an action againtst defendant, who, under the direction of the Commissioners who, by Act of Parliament, were authorized to pave, alter, etc., certain streets, raised the footway contiguous to plaintiff's houses, six feet, so to obstruct the doors and windows thereof. This was done by a regular grade, and no want of care or skill appears from the statement of facts. The action was sustained by Gould, Blackstone and Nares.

The case of Governors & Co., *vs.* Meredith, was a similar action ; but it affirmatively appeared that the alteration by the defendants was *necessary and proper to make the street safe-; held*, that it was not an excess of jurisdiction, and that the action would not lie. (4 *Term R.*, 496.)

The case of Sutton *vs.* Clark was a similar case, and the action was not sustained ; but the Court put it on the correct ground. There was no excess of jurisdiction, and no imputation of negligence. *The defendants used their best skill and diligence, and therefore*, they were not held responsible. (1 *E. C. L.*, 493; 6 *Taunt.*, 29.) To precisely the same effect are Jones *vs.* Bird, 5 B. and Ald., 837; Hall *vs.* Smith, 2 Bing., 156; Humphrey *vs.* Means, 1 M. and R., 187. The counsel cited further : Callender *vs.* Marsh, 1 Pick., 430; Graves *vs.* Otis, 2 Hill, 470; Wilson *vs.* Mayor, 1 Denio, 597; Harris *vs.* The Mayor, 1 Humph., 400; O'Connor *vs.* Pittsburgh, 6 Harris. 188; Greene *vs.* Reading, 9 Watts, 382; Henry *vs.* P. & A. Bridge Co., 8 W. & S., 85; Rounds *vs.* Mumford, 2 R. I., 161.

*J. Knox Gavin*, with whom was *G. V. N. Lothrop*, for defendants in error.

The city cannot be liable for any error or unskillfulness in the plan of sewerage, which includes the time, place, mode and form of the construction of sewers. In all this the action of the corporate authorities is *quasi* judicial or governmental, and cannot be reviewed here. (*Wilson* vs. *Mayor, etc*, 1 *Denio*, 597; *Mayor* vs. *Bailey*, 2 *Ib.*, 450; *Milhau* vs. *Sharp*, 15 *Barb.*, *S. C. R*, 193.) The actual mechanical part of the building of the sewers is mininsterial, and for negligence in this, the city, like an individual, is liable.

The law relied on by the plaintiff's counsel do not establish the doctrine contended for by them. Mayor, etc., *vs.* Furze, was a case where the injury arose from want of repairs in the sewer, of which the authorities had notice. They alone could repair, and the neglect in that case was of a ministerial duty. The sewer in that case was built by special tax on the adjacent lots. It was in the nature of an easement to those lots, under the sole care of the city. Bailey *vs.* Mayor, etc., was decided on the ground that in constructing the Croton dam, the City of New York was not acting in any municipal capacity, but as a private Corporation, exercising a franchise conferred upon it for private advantage. The Court of Errors held in this case, that the city, in building this dam on its private property, was, like a natural person, bound to build so as not to endanger the property of others. Rochester White Lead Company *vs.* City of Rochester, is simply an authority for saying, that if a city obstructs a natural watercourse, it shall be liable for back flowage occasioned thereby. Delmonico *vs.* Mayor, etc., and others, are cases of liability for negligence in mere ministerial acts. Where one is authorized by a public statute to do an act which implies discretion and judgment, he is not liable for damages, if he neither

abuses the discretion nor is guilty of negligence in the minis-
terial part of the act. (*Plate Glass Co.* vs. *Meredith,* 4
*Term R.,* 794; *Thurston* vs. *Hancock,* 12 *Mass.,* 2-6; *Pun-
ton* vs. *Holland,* 17 *Johns.,* 92; *The King* vs. *Com. of Sewers,*
8 *B. & C.,* 355; *Hall* vs. *Smi h,* 2 *Bing.,* 156; 2 *Barb., S.
C. R.,* 168; *Benedict* vs. *Goit,* 3 *Ib.,* 459; *Henry* vs. *P. & A.
Bridge Co.,* 8 *Watts & Serg.,* 85; *O'Connor* vs. *Pittsburg,* 18
*Penn. St. R.* 187; *Rounds* vs. *Mumford,* 2 *R. Island,* 154;
*Lansing* vs. *Smith,* 8 *Cow.,* 146; *Graves* vs. *Otis,* 2 *Hill,* 466;
*Radcliff's Ex'rs.* vs. *Mayor, etc.,* 4 *Comst.,* 195; *Wilson* vs. *the
Mayor, etc.,* 1 *Denio,* 595; *Callender* vs. *Marsh,* 1 *Pick,* 418.)
So in the case of a public officer, acting within a legal discre-
tion. (*Whitfield* vs. *Lord DeSpencer, Cowp.,* 763; *Kendall*
vs. *Stokes,* 3 *How.,* 87.)

By the Court, WILLSON, J.

The argument of the counsel for the plaintiff in error was
based upon the assumption, that the Court charged in sub-
stance, that the defendants were not liable for injuries
occasioned by their negligence or unskillfulness in the con-
struction of sewers, so long as they acted in good faith and
without malice; and we are clearly of opinion, that the charge
is not liable to such construction.

The rule is well settled, that to charge a person, or a
Corporation, in an action in the case, for negligence in the
performance of any public work, whereby any person has
sustained any special damage, the law must have imposed a
duty, so as to make that neglect culpable. (*Esp. N. P. Tit.,
Trespass on the case; The Mayor, etc.,* vs. *Cunliff,* 2 *Comst.,*
165; 1 *Chit. Pl.,* 133.)

By the bill of exceptions, it appears that the plaintiff's
private drain from his cellar was connected with and opened
into Congress street sewer, and that, in consequence of the
improper connection of that sewer with the sewer on Wood-
ward avenue, the water set back from the sewer into the

56

plaintiff's drain, by which his cellar was flooded, and the damage complained of ensued.

The fact that the damage complained of happened wholly from the private drain being connected with the public sewer, must have an important bearing in determining the rights and liabilities of these parties.

The bill of exceptions also shows, that the plaintiff paid the defendants a yearly sum for the privilege of thus connecting his drain with the public sewer.

Such a state of facts naturally suggests two questions for our determination. *First*. Would the defendants have been liable had nothing been paid by the plaintiff for the privilege or license thus granted? and, *secondly*. Does the payment made create a liability, if none before existed?

In regard to the first question, we think it very clear that the defendant cannot be made liable upon any principle of law, whether as applied to Municipal Corporations or individuals. The powers granted to Municipal Corporations for the laying out and making of highways, and for opening and grading streets, and the construction of sewers, involve the exercise of discretion on the part of the municipal authorities, and should be employed for the benefit of the public at large, and not for the private convenience or advantage of individuals ; nor are the officers of a Municipal Corporation justified in the exercise of those powers, except in reference to the public demands. The sewers are built as well for sanitary purposes as for drainage for the benefit and advantage of the public at large ; and the city owes no legal duty or obligation to individuals in their contsruction, maintenance or repair. As was well said on the argument, the sewers are built by general tax ; not for any particular individual, but for the general welfare ; not with the view, perhaps, of any perfect good to any one, but of the greatest good to the greatest number.

The law is well settled in this country; and in England,

that towns and boroughs are not liable to individuals for defects in their roads or bridges, except by some statute; and it is obvious that the powers granted to and exercised by the defendants in laying out streets and constructing sewers, are identical with those of Highway Commissioners in establishing highways and building bridges.

It is manifest then, we think, that the defendants are not liable at the suit of a private individual for damages arising from the insufficiency or defective construction of its public sewers, when such damages result directly to the party injured from his use and occupation of the same, for his private advantage and convenience. Any other doctrine would lead to the unwarantable conclusion, that Municipal Corporations in their public works were not bound to act solely in reference to the public good, but in reference to individual convenience. Had the plaintiff's damage happened directly in consequence of the defendants' want of prudence or skill in the construction of their sewers, instead of by reason of his private drain being connected with the sewer, the case would have merited a very different consideration. Or had it occurred in consequence of the imprudent and unskillful construction of the Congress street sewer with the Woodward avenue sewer, or if from the want of capacity of the sewer the water had flooded the plaintiff's cellar, by flowing up through the apertures from the surface, instead of flowing back through his private drain, made by himself for his own private convenience, a very different question from the present would have been presented. A different conclusion would impose upon the city the obligation to furnish private drainage for individuals; and the question presented to its officers would not be, what the public exigencies demanded in reference to its capacity, but how they might best discharge its legal obligations to individuals. We believe that no different rule applies to a Municipal Corporation in the construction of its public works and within the scope of its authorized

powers, than would attach to an individual doing a lawful act on his own land ; and no one, we think, would contend that, if A should dig a drain on his own land (however careless and unskillful he might have been in doing the work), and permit B to connect his drain with it, and in consequence of which connection the land of B is overflowed, A would be liable to him in damages. Such a proposition could not be entertained for one moment.

To hold then, in this case, that the Corporation assumed some legal duty, or obligation, because they permitted the plaintiff to drain into the public sewer, would, upon principle, impose a liability upon the individual in the case supposed. We conclude, then, that as the plaintiff's damages accrued by reason of his private drain, made by himself for his private convenience, the defendants are not liable unless made so by the payment of the sum annually, for the privilege of draining into the public sewer ; and the question of negligence or unskillfulness in the defendants, upon the case presented, is immaterial.

*Secondly :* Does the payment of the sum required by the ordinance create a liability, if none before existed ? If the payment by plaintiff imposed any legal obligation on the part of the defendants, it must be on the ground of an express or implied undertaking of the defendants to furnish ample drainage for his premises. From the case presented, such an undertaking was manifestly not contemplated by the parties ; but that the sum paid was for the license or permission, and not for any express or implied obligation assumed by the defendants. No express contract is claimed, and we are at a loss to know upon what principle the Court could imply one. And, if it be implied in this case, why not in any case of license or permission granted for a consideration ? Why not as well, in case A permits B to use his private way for a consideration, imply that A thereby undertakes to indemnify B for any loss or damage suffered in consequence of

such private way being out of repair? If we can imply, from the payment made to the defendants, an undertaking on their part, what are we to presume to be its terms and conditions, and the several duties imposed on the parties? But, even suppose the defendants had made an express contract with the plaintiff to guaranty to him perfect drainage for the sum paid, it would not avail the plaintiff in this or any other action brought for its breach; because it would clearly exceed the powers of the Common Council, and therefore would not be binding on the defendants. The Common Council would manifestly have as much right to insure against damages by fire, as against damages by water.

Their acts and contracts are only binding on the city when they keep within the scope of their authority; and no such authority is conferred by their charter. A Corporation and an individual, in regard to the power of making contracts, stand upon a very different footing. The latter, existing for the general good of society, may do all acts, and make all contracts, which are not, in the eye of the law, inconsistent with the great purpose of his creation; whereas, the former, having been created for the specific purpose, not only can make no contract forbidden by its charter, which is, as it were, the law of its nature, but in general can make no contract which is not necessary, either directly or incidentally, to enable it to answer that purpose. Hence, where a Company was incorporated for the purpose of establishing and conducting a line or lines of steamboats, vessels and stages, or other carriages for the conveyance of passengers between certain places, a contract by such Company, for the breaking of ice and towing of vessels through the track broken, to another place, is invalid, and cannot be enforced. Nor is a Corporation, in such case, where an action is brought against them on contract, estopped from denying their competency to make the contract; for if so, the estoppel would

apply equally to the other contracting party, and the limita-
tions upon the power of the Corporation would be of no
avail. (*Angell & Ames on Corp.*, § 256; 8 *Gill & Johnson*,
248.)

We are, therefore, clearly of opinion, that there is no error
in the record, and the judgment of the Court below must be
affirmed, with costs.

Present, WILLSON, GREEN, BACON, COPELAND, and JOHN-
SON, J. J.