Joseph O. B. Darling *vs.* City of Bangor.

Penobscot.   Decided March 27, 1878.

*Town.   Drains.*

To determine a plan of drainage and what drains shall connect in the streets of a city, is a judicial act of the officers for which the city are under no common law liability; though if the connection be unskillfully made, it is a ministerial act for which the city is liable in damages to a party injured thereby.

On report.

Trespass on the case declaring on a common law liability for the flowage of the cellar of the plaintiff's store on the easterly side of Exchange street, in May and June, 1874, and setting out, among other things, that he had and maintained a private drain from the cellar through and across Exchange street and into Kenduskeag stream which well and effectually drained the premises; that the defendants built Exchange street sewer and cut off and blocked the plaintiff's drain, so that he was obliged to connect with the defendants' sewer; that the defendants turned into and

connected with Exchange street sewer, two others, the York street and State street sewers, by means of which connections, the defendants poured vast streams of water, impregnated with filth, in seasons of heavy rain, into Exchange street sewer beyond its capacity to carry off, and through the plaintiff's private drain into his cellar, and alleging damage.

The case finds, in substance, these facts, and that the Exchange street sewer was built by the municipal officers in 1869 ; that in building it the plaintiff's drain was necessarily cut off; that it was connected with the sewer, no one objecting; no written application was made nor written permit granted to enter the sewer until long after the damage complained of, nor until November 13, 1874 ; that the State and York street sewers were made and connected with Exchange street sewer by the concurrent action of the two branches of the city government and not by the municipal officers alone ; that until after their connection, the Exchange street sewer never overflowed ; that the rains which caused the overflow were extraordinarily severe, and were the same stated in *Blood* v. *Bangor,* 66 Maine, 154, to which reference was made.  Soon after the last overflowing of the Exchange street sewer into plaintiff's cellar, as alleged in the writ, the York street sewer was extended through York street slip into Kenduskeag stream, and the Exchange street sewer was also turned, so that the contents of Exchange street sewer, received above York street, flow down through York street slip sewer.  Since then there have been no overflowings of the Exchange street sewer.

The full court to draw such inferences as a jury might, and to order judgment.

*F. A. Wilson & C. F. Woodard,* for the plaintiff.

*T. W. Vose,* city solicitor, for the defendants.

DANFORTH, J.   The legal liabilities of cities and towns growing out of facts similar to those involved in this case, have of late years been much discussed, and the principles of law applicable thereto have become well settled, though their application may at times be a matter of some difficulty.   Municipal corporations are endowed with certain judicial or *quasi* judicial powers, to be exercised, not

for their own private convenience or profit, but as a part of their public duty, for the furtherance of those things necessary or convenient to the community at large. The performance of these duties, involving as they do the exercise of judgment as to the time and manner of accomplishment, as a general rule impose no liability to an action for private injury resulting from acts within their jurisdiction. When these acts cease to be judicial and become ministerial only, then for negligence or omission, an action may be maintained by a person suffering injury thereby.

Thus the maintenance of sewers and drains, as they are necessary to the public health, or to keep the roads in a safe condition, comes within these judicial powers; the manner of building and keeping them in repair, are usually considered as ministerial duties. *Mills* v. *Brooklyn*, 5 Law Register, N. S. 33 and note. *Mersey Docks* v. *Gibbs*, 11 H. L. 713. *Flagg* v. *Worcester*, 13 Gray, 601.

In this case, under the authority to draw such inferences as a jury might, we understand that Exchange street drain, having been laid out and caused to be built by the municipal officers, was a statute drain with all the privileges and liabilities attached to such. For the location or construction of this no complaint is made.

The connection of the York and State street drains was not made by the municipal officers, but by the city government. It is true, as contended, that the municipal officers are a part of the government, and as such assented to the building of the drains. But to act as a distinct and separate body is one thing; for the same persons to act in connection with and as a part of another body, is another and a very different thing. A drain cannot have the sanction of the statute, unless it is built by the authority and under the sole responsibility of the body therein provided and in pursuance of the provisions therein prescribed.

These latter drains and their connections with that in Exchange street were not, therefore, built under the statute. Nevertheless they were within the legislative or judicial jurisdiction of the city. It appears that they were built partly to remove one or more nuisances, and partly for the improvement of the streets through

which they passed. Both of these objects are for public purposes, and as such are recognized by the law as matters upon which the city is required to act. The building of these drains, then, would impose no other or greater responsibilities upon the city than would arise in relation to matters generally within the judicial jurisdiction of the city. The location of these drains, being so far as appears wholly within the street and no private property taken for that purpose, can impose no liability upon the city for any incidental damage which may accrue. All liability, if any rests upon the city, must result from the negligent or unskillful manner in which they are built, or a neglect to keep them in repair. But no complaint is made of negligence, either in building or repairing. The allegation in the writ in substance is, that these drains " were wrongfully and without right" connected with the Exchange street drain, whereby a larger quantity of water was turned into the latter than could be vented through it, by reason of which it ran through the plaintiff's private drain into his cellar and caused the damage complained of.

Under the statement of facts we have no doubt the injury complained of was the result, more or less remote, of the connection of the drains. The wrong, however, was not in the connection, for that the city had a right to make, but in making the connection with a drain too small to carry off the additional water. This was the view of the court in *Blood* v. *Bangor*, 66 Maine, 154, an action founded upon the same alleged wrong. That case, however, rested upon the statute liability which makes the city an insurer, and not upon the principles of the common law as must this one.

Here would seem to be an error of judgment rather than any intentional or even negligent wrong or want of skill, and it would seem to be difficult under the common law to hold the defendants without one or the other.

In *Child* v. *Boston*, 4 Allen, 41, on page 51, it is said : "Upon mature deliberation, we are all of the opinion that the defendants are not responsible for any defect or want of efficiency in the plan of drainage adopted, although it might expose the plaintiff to incidental inconvenience." See, also, *Flagg* v. *Worcester*, above cited.

It is, however, claimed that the defendants' act had the direct effect to throw the water upon the plaintiff's premises. If the facts were such as would sustain this theory, undoubtedly the defendants would be liable. It is unnecessary to cite authorites to show that to abate one nuisance it is not allowable to make another. But the facts are otherwise. The water is turned into a sewer within the street, which continues in the street and the outlet of which does not turn the water in the direction of the plaintiff's cellar. It gets there by overflowing, as already seen, by the insufficient size of the sewer.

But however this may be, there is one ground fatal to the plaintiff's action. The plaintiff's own drain is the proximate cause of the difficulty. But for this, there is no reason for supposing there would be any such injury as is complained of from the water of any or all of the defendants' drains. They might overflow but it would not be that for which damages are claimed. The allegation in the writ places the damage upon the water running through plaintiff's private drain. If this drain were rightfully there the result might be different. But it is not. Its opening into the defendants' drain is without authority, or at least, it was made under such circumstances as to impose no duty upon the defendants in regard to it. The plaintiff has no rights under the statute for its connection ; none of the statute provisions were pursued. There are no rights resulting at common law, for nothing was paid, no contract entered into with regard to it. The connection was made for the plaintiff's private convenience, without objection to the same, but also without any such stipulation as would impose any duty in regard to it upon the defendants. *Barry* v. *Lowell*, 8 Allen, 127.

The subsequent payment could not affect its previous condition. That would have effect only from its date. The connection was not made under any assumed agency in behalf of the city, and therefore the act is one to which ratification does not apply. The law in relation to this subject matter is well and we think correctly stated in *Ashley* v. *Port Huron*, cited in the argument from 9 Chicago Legal News, No. 24, and were the facts in this case the same, the action might be maintained. There the claim is

founded upon the cutting of the plaintiff's sewer, by which the water was collected and thrown upon his premises. Here the sewer was cut, and for that the plaintiff, or his lessor had, and perhaps still has, a remedy under the statute by virtue of which it was done, or otherwise. But that is a wrong for which he does not claim a remedy here. His action rests upon a very different foundation, and as we have seen, upon one which fails him.

*Judgment for defendants.*

APPLETON, C. J., DICKERSON, VIRGIN, PETERS and LIBBEY, JJ., concurred.