## HOEHL v. THE CITY OF MUSCATINE.

1. **Contributory Negligence:** INSTRUCTIONS: ORDINARY CARE. In an action against a city to recover for an injury to a building, alleged to have been caused by the wrongful and negligent obstruction of the natural channel, and diversion of the course of a stream by the defendant, the failure of plaintiff to use ordinary diligence and effort to prevent damage, and to incur moderate expense, if thereby the injury might have been prevented, would constitute contributory negligence, and entirely bar recovery; and an instruction that in such case he would still be entitled to recover such sum as would have prevented the injury if it had been expended, was erroneous.

2. ——: ——: DIVERSION OF STREAM. An instruction that if the plaintiff erected his house where the creek had flowed for ten years, and where, but for the house, it would still have flowed, and the damage was caused thereby, he would still be entitled to recover unless it had so flowed with his knowledge and consent, was erroneous. In such case he had no right to divert the flow of the creek, whether such flow had been with his knowledge and consent or not.

3. ——: ——: RIPARIAN PROPRIETORSHIP. Where a stream meanders through a city, and lots and streets have been platted without reference to it, nor bounded by it, the doctrine of riparian proprietorship is not applicable; and an instruction applying that doctrine to this case was error.

4. ——: ——: GOOD FAITH. Under the circumstances of this case, an instruction that the adoption in good faith by the defendant, of the plans of skillful and competent engineers and workmen, in constructing and repairing bridges and culverts across the creek in question, would not protect the defendant, was erroneous. Where the city acts in good faith and an unexpected damage results, the city is not liable.

5. ——: ——: STATUTE OF LIMITATIONS. Where the evidence showed that if any cause of action existed it must have arisen within five years before the commencement of the suit, an instruction excluding the question of the statute of limitations from the jury was proper.

*Appeal from Muscatine Circuit Court.*

THURSDAY, DECEMBER 15.

THE plaintiff claims of the defendant $2,000, for alleged injury to his building, situated on the westerly one-third of lot 1, in block 32, in the city of Muscatine. The plaintiff states in his petition that a certain water-course known as

Pappoose Creek has for twenty years last past flowed in and along the line of Sycamore street, in the city of Muscatine, which street adjoins the westerly line of his lot; that after the erection of his building, and on or before the 14th day of August, 1878, the defendant wrongfully, negligently and carelessly diverted the flow of said stream from its natural channel in which it was accustomed to flow at the time of the erection of plaintiff's building, and had flowed for a long time prior thereto; and wrongfully, negligently and carelessly obstructed the flow of water in said stream, by the driving of piles and the building of embankments in the bed and channel directly opposite the premises of plaintiff, and the placing and maintaining of other obstructions therein, and wrongfully, negligently and carelessly changed the current and direction and force of said stream, by the making of excavations, the driving of long rows of piling, the building of bulk-heads and other obstructions, and the building and changing of bridges and sewers in and along the channel of said stream, at points near and above the plaintiff's premises, whereby, on the 14th day of August, 1878, the water in said creek, being swollen and increased by recent rains, was thrown with great force and violence upon and against the rear and side of plaintiff's building, and into the same, and the walls of the rear part of said building, and the floors, ceilings, partitions and roof thereof were thereby broken down, injured and destroyed, and the entire building was cracked, weakened and defaced, and the goods of the plaintiff were wet and destroyed, the building was rendered untenantable, and the business of plaintiff was interrupted for the space of seven weeks, to his damage $2,000, and without negligence of the plaintiff causing or directly contributing to said injury and damage.

The defendant answered, denying the wrongful diversion of the waters of Pappoose Creek, and that it obstructed the stream as alleged, and that plaintiff sustained damage, and that he was without fault or negligence. The defendant al-

leged that the plaintiff's injury was the direct result of his own negligence; that he contributed thereto by erecting his building in the bed of Pappoose Creek, thus obstructing the channel and causing the water to wash against his house, which was insufficient in material and construction to stand the extraordinary flood which caused the injury; that said building was erected more than twelve feet below the established grade of the city, and partly on Sycamore street, in the bed of the stream, and that the creek, before the plaintiff erected his house, had a wide and sufficient bed in which the water had flowed for more than ten years before said house was built, and where said water would naturally flow at this time were it not that said house deviated and has forced the water into a narrow and insufficient channel, which contributed to the injury for which the plaintiff sues; that plaintiff could have protected himself at moderate expense; that plaintiff's cause of action accrued more than five years before he instituted his suit and is barred by the statute of limitations; that the defendant had a right to have said creek flow over the ground where plaintiff's house was built, because from time immemorial and for more than ten years before said house was built said creek occupied said ground as its natural bed and channel, and would still flow over said ground but for the said house which obstructed the channel, and the driving of piles, making embankments, and other things referred to by plaintiff as done by defendant, were made to prevent a diversion of the channel against Sycamore street, which was threatened, because of said house; that defendant employed skillful engineers and competent workmen to plan and execute such protection; that said creek is a wet weather creek, with its bed ordinarily dry; that it crosses the entire plat of the city, running in various directions, irregularly, through the property and lots of individuals, and crossing all the streets of said city from the westerly part thereof to the Mississippi River; that water which is collected in said creek from ordinary rains

is entirely harmless, but in times of extraordinary rains, floods, and freshets, the bed of the stream has not sufficient capacity to carry off the waters, and the stream becomes swollen and the waters rise many feet above the banks of said stream, and run into and upon and overflow all the low ground along its course, and particularly into and upon the premises of plaintiff, and did so run at and long before the time when plaintiff. erected his house; that defendant owns and has charge of the streets of the city, and it is authorized, and it is its duty, to establish the grades of the streets of the city; to work the same, and keep them in fit condition for use; that the streets along and across which the said creek runs, cannot be used without making embankments and bridges, and such embankments and bridges when made require the driving of piles and other precautionary measures to protect them from being carried away by the periodical floods which, occur in said creek from the surface water which collects therein from extraordinary rains and the melting of snow; that the piles, embankments, bridges and other things complained of by plaintiff as causing his injury, were driven, erected, and built by defendant in the performance of its duty to grade and protect its streets, and were planned and done in a proper and skillful manner, and under the charge and direction of proper persons; that the damage complained of by plaintiff was caused by extraordinary rains and floods. The surface water so created could not be carried off by said creek, but overflowed its banks and the premises of plaintiff; that plaintiff's damage was occasioned by the wild waters of said stream, against which the defendant had a right to protect its streets, and against which the plaintiff was bound to protect himself.

The plaintiff replied, denying every allegation of the defendant's answer.

There was a jury trial, resulting in a verdict and judgment for plaintiff for $250. The defendant appeals.

*J. S. Richman* and *Brannan & Jayne*, for appellant.

*J. Carskaddan* and *Cloud & Cloud*, for appellee.

DAY, J.—The evidence shows that the stream is of the character alleged in the answer, and that on the night of August 14th, 1878, an unusual rise in the stream tore down the north end, which was the rear of plaintiff's building, and about twenty-five feet of the west side. The plaintiff's building was erected on the east side of the stream, was nineteen feet wide from east to west, and fifty feet long from north to south, the west end extending seven inches upon the east side of Sycamore street. The evidence shows that before the erection of plaintiff's building, the entire lot upon which it was erected was frequently covered with water. The plaintiff's house was erected in 1869. Upon the part of the plaintiff, evidence was introduced tending to show that when he erected his building, it was five feet from the channel of the creek at the northwest corner; that the second year after the plaintiff's building was erected, he placed a row of piling on a line with the east side of Second street bridge, extending along the west side of his building and beyond the north end, and boarded them up on the side next the stream with two inch plank; that soon thereafter the city put in a row of piling on the west side of the creek, opposite the plaintiff's piling, and filled behind the piling with earth, thus narrowing the channel of the creek some twenty-five feet; that this piling was washed out in 1876 and the city then put in a double row of piling, which, with reference to the former piling, widened the channel of the creek about nine feet at the rear end, and about five feet at the Second street bridge; that this piling was taken out in 1878, at the time the plaintiff's building was injured; that in 1875, a bridge across the stream in question at Third street, three hundred feet north of the plaintiff's premises, was moved several feet to the east, and one Smalley put in rattlings on the east side of a lot which he owned on the west side of the creek

below the Third street bridge, the combined effect of which was to throw the channel of the stream further east, and upon the plaintiff's premises. Upon the other hand, evidence was introduced, upon the part of the defendant, tending to prove that the rear end of the plaintiff's building was placed immediately in the channel of the stream, narrowing the bed of the stream twenty feet, throwing the water to the west, and rendering necessary the piling driven by the city on the west side of the stream, for the protection of the west portion of Sycamore street, and the property on the west side of the stream; that when the bridge was moved east in 1875, it was placed diagonally with the stream, and that the bulk-head had a tendency to throw the water to the west, away from the plaintiff's premises; that no considerable change has taken place in the channel of the stream since the erection of the plaintiff's building, but that whatever change has occurred, has been in a tendency of the channel to the west side of Sycamore street, away from the plaintiff's premises. Evidence was also introduced, bearing upon the several instructions discussed in the opinion.

I. The 5th paragraph of the charge of the court to the jury is as follows: "If you find from the greater weight of evidence that the plaintiff erected his building wholly or partially in the bed of said creek, and thereby obstructed its natural channel and caused the waters thereof to wash against said building; or that the said building was insufficient in material or construction to stand such extraordinary floods as might reasonably have been anticipated; or that it was placed far below the established grade and partly upon Sycamore street and in the bed of the stream and thereby diverted its waters from their natural channel; or that the plaintiff could at a moderate expense and with reasonable effort have protected his said building and property from the alleged injury and damage, and neglected to do so, then you will inquire whether these acts of the

1. CONTRIBUTORY negligence: instructions: ordinary care.

plaintiff, or either of them, contributed directly to his alleged injury and damage; and if you find that such acts, or either of them, did so contribute to such injury and damage, then the plaintiff will not be entitled to recover, except as herein-after stated in the 12th paragraph of this charge."

The twelfth paragraph of the court's charge, to which reference is thus made, is as follows: " If you find the plaintiff entitled to recover, the measure of his damage will be such sum as will repair the injury to his property, and compensate him for the immediate, necessary and actual loss sustained by being deprived of the use of his building, and injury to, or destruction of, his goods and chattels therein, caused by the wrongful, unlawful, or negligent acts of the defendant. It will be your duty to ascertain the condition of the plaintiff's building just before the storm or flood complained of, and then ascertain the injury and damage caused by said flood, and such injury and damage will be the measure of the plaintiff's recovery so far as his building is concerned; and this sum, added to the injury and damage to personal property, and by being deprived of the use of said building, if any, as above stated, will be the amount of your verdict.

But if you find that the plaintiff, at a moderate expense and by the exercise of ordinary care and effort, could have protected his property from the alleged injury and damage, then he can recover only such sum as would have thus protected him from such injury and damage. Such expense must be moderate, and the care and effort required, such as persons of ordinary prudence and caution would exercise under similar circumstances. Looking at all the facts and circumstances, as shown by the evidence, and the situation of the plaintiff's premises, it is for you to say, whether or not by such expenditure, and care, and effort, the plaintiff could have prevented the injury and damage for which he seeks to recover. If he could, his recovery will be limited to the sum which would have prevented said injury and damage; if he could not, he

will be entitled to all the damages he has sustained under the rule first above stated."

Taking these two instructions together the meaning of the court is not clearly apparent. It is very clear from the fifth paragraph of the court's charge, that the court in substance directed the jury, that, notwithstanding they should find from the evidence that the plaintiff erected his building wholly or partially in the bed of the creek, thereby obstructing the natural channel and causing the waters to wash against said building, and the building was insufficient in material and construction to stand such extraordinary floods as might reasonably have been anticipated, and was placed far below the established grade, and partly upon Sycamore street, and in the bed of the stream, thereby diverting its waters from their natural channel, and that the plaintiff could at a moderate expense and with reasonable effort have protected his property, and neglected to do so, and that these acts contributed directly to the plaintiff's injury, still he should not be absolutely denied the right of recovery, but might recover in some qualified and limited sense as prescribed in the twelfth paragraph of the charge. This instruction is clearly erroneous. For if the facts, or any of them, enumerated in this paragraph of the charge, existed, and contributed directly to the plaintiff's injury, then the injury was contributed to by the plaintiff's own negligence, and under no circumstances and to no extent, can he recover. In *Simpson v. The City of Keokuk*, 34 Iowa, 568, it is said: "If the plaintiffs, by the use of ordinary diligence and efforts, and at a moderate expense, might have prevented the damage, it seems necessarily to follow, that their negligence contributed to the injury, and this, upon a well settled rule, would defeat the plaintiff's recovery."

Coming now to a consideration of the 12th paragraph of the court's charge, it is difficult to ascertain with certainty what limitation the court designed to place upon the 5th paragraph, and under what circumstances and to what extent the court

intended to charge that the plaintiff might recover notwith-standing the negligent acts enumerated in the 5th paragraph. That the court intended to place some limitation upon the 5th paragraph, is apparent from the two paragraphs taken together, and that any limitation is erroneous, we have already shown. The meaning of the court seems to be that if the plaintiff, at a moderate expense, and by the excercise of ordinary care and effort, could have protected his property from the alleged injury, and damage, and failed to incur such expense, and to exercise such ordinary care and effort, still he may recover such sum as would have prevented the injury, if it had been expended. But, we have already shown that the failure to use ordinary diligence and effort to prevent damage, and to incur a moderate expense, when such would have been sufficient to prevent injury, constitute contributory negligence, and entirely bar recovery. See *Simpson v. The City of Keokuk, supra.* Il we have misapprehended the real meaning of the court, the fact that we have not been able to understand the court's meaning, renders it apparent that the jury may have been mis led to the defendands prejudice. In giving the instructions under consideration the court erred.

II. The court instructed the jury as follows: " 6. If you find that the injury and damage complained of were caused by

2. —— : ——: the floating down, in said creek, of wood, timber, diversion of
stream. lumber or other material which washed against his house, independently of any wrong or negligence on the part of the defendant; or that such injury and damage were caused by the acts, lawful or unlawful, of other parties, or of the plaintiff; or that such injury and damage were caused by a storm of so extraordinary a character as that the force and effect thereof could not have been reasonably anticipated and provided against by the defendant; or that for more than ten years before said house was built, said creek, with plaintiff's knowledge and consent, flowed over the ground on which it was erected, and would have continued to flow over said ground

but for the erection of said building, and that the plaintiff's injury and damage were caused thereby; then the plaintiff will not be entitled to recover." The defendant objects to the latter part of this instruction, which by necessary implication reognizes the doctrine that if the plaintiff erected his house where the creek had flowed for ten years prior thereto, and where it would, but for the erection of the house, have continued to flow, and the plaintiff's damage was caused thereby, still the plaintiff would be entitled to recover, unless the creek had flowed for ten years over the ground on which he erected his house, with his knowledge and consent. This portion of the instruction is, we think, erroneous. If the creek had flowed ten years over the ground on which the plaintiff erected his house, and would still have flowed there but for the erection of plaintiff's house, then the plaintiff had no right to divert the flow of the creek, whether he knew of and consented to such flow or not, and if the erection of the building in such place, and the diversion of the channel of the creek, caused plaintiff's damage, he cannot recover.

III. The court instructed the jury as follows:

"3. The owners of real property through or along which a water-course flows are called riparian proprietors; and as such proprietors they have the right to the flow of the waters of the stream in their natural and accustomed channel; and no one of said proprietors has the right to divert said stream from its natural course, or obstruct the flow thereof to the material injury and damage of the others. The defendant, as the owner of the streets and alleys of the city for the use and benefit of the public, is a riparian proprietor whenever said stream passes through or along said streets and alleys, and is entitled to the rights, and subject to the liabilities of riparian proprietors. And it is a general principle that any person who without authority diverts the water of a stream from its natural course is responsible to any one who is entitled to have the water flow in its natural channel." In several

*3. ——: ——: riparian proprietorship.*

other instructions the court applied to this case the doctrines of riparian proprietorship. In *Bardwell v. Ames*, 22 Pick., 334, Shaw, C. J., thus defines a riparian proprietor: "By this designation I understand an owner of land bounded generally upon a stream of water, and as such having a qualified property in the soil to the thread of the stream, with the privileges annexed thereto by law."

The evidence shows that the stream in question meanders through the city of Muscatine. Its general course is south, but in places it runs almost directly west. It is not made the general boundary of property situated upon its sides, but the town plat is laid out without any reference to it. In some places lots extend far into the stream, in others they are situated almost wholly within it, and in other places the bed of the stream occupies almost the entire width of a street. It is evident that no lot owner bordering upon the edge of the stream could have a qualified property in the soil to the thread of the stream, for his lot would always be bounded by another lot or by the edge of the street. It seems that the doctrine of riparian proprietorship cannot be applicable to the property thus situated. But, however this may be, it is evident from the entire case that the plaintiff does not base his right to recover upon the ground that he is a riparian proprietor. The plaintiff does not sue for the diversion of the water-course from his premises, nor for the deprivation of any interest in the stream. The ground of the plaintiff's action is that by the wrongful act of the defendant, the water was thrown upon his premises to his damage. His right to maintain an action for such injury does not depend upon his being a riparian proprietor, and the plaintiff does not base his claim upon such ground, either in his petition or in the evidence. In applying to the case, under its circumstances, the doctrines of riparian proprietorship, the court erred.

IV.   The court instructed the jury as follows:

"7. The defendant had the right to grade, protect and im-

prove its streets and alleys, and to construct and repair the necessary bridges and culverts across the stream in question; and if in the execution of said work it adopted in good faith the plans of skillful and competent workmen, it would not be liable for injuries caused by any defects in said plans so far as it had authority to carry them out. But such plans would not protect the defendant in the material diversion and obstruction of the water-course in question; this could only be done in pursuance of legislative authority, and upon making due compensation to riparian proprietors injured thereby. And if you find that in the construction or repairs of such works the defendant wrongfully, unlawfully or negligently diverted or obstructed said creek, or the waters thereof, to the injury and damage of the plaintiff, he will be entitled to recover, unless prevented by other defenses of the defendant stated in the answer." The giving of this instruction is assigned as error. The particular portion of the instruction objected to is that part which directs the jury that the adoption in good faith of the plans of skillful and competent engineers and workmen would not protect the defendant in the material diversion and obstruction of the water-course in question. In this construction the doctrine of riparian proprietorship figures, and seems to have colored the view of the law entertained by the court. The only diversion or obstruction, of which the plaintiff complained, is the causing of the water to flow against the rear of his building. In 'another instruction the court in substance directed the jury that the care and diligence required of the defendant is that degree of care and diligence which would be exercised by persons of ordinary caution and prudence under similar circumstances. Appellee in argument concedes that the point in issue was, and is, was the appellant, in its attempted building of the bridges and improving of the creek, guilty of wrongful acts and negligence. Now, if the defendant in good faith, adopted the plans of skillful and competent engineers and workmen, it did all in that

regard that human judgment and foresight could accomplish, and was not guilty of any wrongful or negligent act. But without some wrongful or negligent act the defendant is not liable. Upon this point the case of *Van Pelt v. The City of Davenport*, 42 Iowa, 308, is directly in point. Of course the city could not have adopted a plan, knowing that it would have the effect of flooding the plaintiff's premises, and for the purpose of producing such result. In such case the city would not act in good faith. But, when, as suggested in the instruction, the city acts in good faith, and an unforeseen and unexpected damage results, notwithstanding the exercise of reasonable caution, prudence and skill, there exists no ground upon which a recovery can be based.

V. The defendant assigns as error the giving of the following instruction:

"It appearing that the action of the plaintiff was commenced within five years from the time of the alleged injury and damage, it will not be necessary for you to consider the plea or defense of the statute of limitations, interposed by the defendant."

5. —— : —— : *statute of limitations.*

The evidence shows that the piling in the creek, which was there when the injury to the plaintiff's property occurred, was placed there in 1876; that the Third street bridge was removed to the eastward, and its position changed in 1875, and that the "attlings were placed in the creek the same year. The injury to plaintiff's property occurred in 1878, and this action was commenced in May, 1879. Whether the statute of limitations began to run at the time the obstructions complained of were placed in the creek, or at the time the injury occurred, the action was not barred when it was commenced. The court did not err, to the prejudice of the appellant, in giving this instruction. It is urged that the verdict is not supported by the evidence, and that it is contrary to the instructions given. In view of what has already been said, these objections need not be considered.

REVERSED.