| 99 | 589 |
| 104 | 193 |
| 105 | 229 |
| 99 | 589 |
| 106 | 466 |
| 99 | 589 |
| 113 | 335 |
| 99 | 589 |
| 127 | 514 |
| 127 | 533 |

THE KNOSTMAN & PETERSON FURNITURE COMPANY V. THE CITY OF DAVENPORT, Appellant.

**Insufficient Drainage:** MUNICIPAL CORPORATIONS: *Powers of.* The fact that a city, after notice that drains conducted by it to carry off street surface water are insufficient, fails to use ordinary diligence, to make such changes as appears to be reasonably necessary to make the drain serve the purpose intended, does not render the city liable for the resulting overflow of private property, where it did not accelerate the flow of the water, or collect the same, and discharge it on such property otherwise than it would naturally have been discharged thereon, when it was not negligent either in devising or in adopting the plan of the drains.  Since the action of establishing drains is *quasi* judicial, or rather, legislative, there can be no liability for a mere mistake in judgment as to the sufficiency of the drain, and where private property is put into no worse situation than if no drain had been put in.

TEMPORARY OVERFLOW: *Notice.* In an action by an owner of property flooded with surface water as a result of the alleged insufficiency of street drains, where defendant city claimed that the overflow was caused by the temporary clogging of catch basins during a severe storm, it was error to refuse to charge that, if the clogging was the proximate cause of the overflow, and the city was not negligent in the construction of the catch basins, it would not be liable, unless it had had sufficient notice of the clogging to enable it to remove the material from the basin before the oveflow occurred.

DUTY OF LAND OWNER.  An owner of property below the level of the street on which it abuts, cannot recover for the overflowing of the same by surface water as a result of insufficiency of street drains, if the overflow would not have occurred had his land been so filled as to be on a level with the street.

*Appeal from Scott District Court.*—HON. C. M. WATERMAN, Judge.

MONDAY, OCTOBER 26, 1896.

ACTION at law, to recover damages from defendant city, for causing the overflow of water upon the plaintiff's property. Trial to a jury. Verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*E. M. Sharon* for appellant.

*Davison & Lane* for appellee.

DEEMER, J.—I.    Plaintiff is a corporation engaged in the manufacture of furniture.    Its factory is situated upon the south side of East Front street in the defendant city, and faces north thereon.    Wall street and Mississippi avenue are streets which intersect with Front street on the north side thereof;  the former just west, and the latter east, of the plaintiff's factory.    These two streets run north and south, and have a decided up-grade to the north, and the surface water from twenty or thirty acres of ground is cast upon these streets, and conveyed down to Front street. At times of heavy rains the volume of water which comes down these streets is quite large.    Front street, from a point about ninety feet east of plaintiff's property, has a descending grade to the west, and towards plaintiff's place of business, and the surface water thereon runs in that direction.    Prior to the year 1892, the city had constructed ordinary culverts at the intersections of Mississippi avenue and Wall street with Front street, which carried the water which came down these north and south streets under Front street, and into the Mississippi river.    In the summer of that year the defendant paved Front street for a long distance on either side of the plaintiff's property, took out the culverts before referred to, and in place thereof substituted iron drain pipes or sewers.    These pipes were smaller than the culverts which they replaced, and were covered at the north end with an

iron grating or cross bars. In the month of April, 1893, a very heavy rainfall occurred, and the water which was collected on the two north and south streets came down in such volume and with such velocity as to overflow Front street, and run into plaintiff's factory, flooding the same with water, mud, dirt, and refuse, tearing down a portion of the retaining wall built in front of the property, breaking some of the windows, damaging the machinery, and spoiling some of the goods which were in process of manufacture. This action is to recover the damages sustained, and the negligence declared upon is that the city put in two small iron pipes to carry off the water; that it made the opening into the sewer too small, and caused it to be obstructed by the iron grating; that it failed to put in proper inlets or catch basins, or to furnish proper means to drain and carry off the water which runs down and along Front street during and after rains. The answer admits the paving of Front street, but denies the other allegations of the petition. The defendant also pleads that the improvement of front street was done under the care and supervision, and in accord with the plans of a competent engineer selected for that purpose, and further avers that, if plaintiff was damaged, it was due to an unusual and extraordinary fall of rain, and to want of proper precautions and safeguards on the part of the plaintiff. The verdict of the jury on these issues was for the plaintiff as we have stated.

The sixth instruction which the court gave to the jury was as follows: "Sixth. Even though the plan as adopted for such gutters and culverts, including the inlets, was approved in whole by a competent engineer, yet if, after such drains or gutters were constructed, it reasonably appeared that they were insufficient to carry off such quantities of water as would probably seek an outlet through

them, then it was the duty of the city to use ordinary
diligence to make such changes as appeared reason-
ably necessary to make them serve the purpose
intended. And if in this case, without regard to the
degree of care the city may have used in making plans
for the construction of said gutters and culverts, you
find they were insufficient for the work intended, and
that, after they were completed, the city, through its
officers or agents having general charge of this depart-
ment of work, had notice of such insufficiency; and if
such notice was given long enough prior to the injury
to the plaintiff's property to have reasonably enabled
said city to effect the changes necessary to put these
waterways in such condition that they would perform
the work for which they were designated, then you
must find the city to have been negligent." The cor-
rectness of this instruction is challenged by appellant.
It insists that, if the drain and inlet were constructed
in accordance with the plans of a competent engineer,
employed by the city for the purpose, it is not liable
in damages for the results of the overflow; and it
asked an instruction to this effect, which was refused
by the court. The argument is that the city acted
judicially in determining upon the sufficiency of the
plans, and that it incurred no liability if it used
ordinary and reasonable care in the selection of a
competent engineer, and followed his plans in con-
structing the drain; that its only duty thereafter
was to keep the premises in the condition in which
they were planned and constructed; or, to use coun-
sel's language, "if the city was not liable for its
insufficiency when it was planned and constructed, it
never would be." That the general rule is, as is claimed
by appellant's counsel, must be conceded. The
best statement of it we have found, is that made
by Judge Dillon, in his work on Municipal Cor-
porations (4th Ed., Vol. 2, section 1046), which is as

follows: "Since the duty on the part of a municipality of providing drainage for surface water or constructing sewers, is in its nature judicial or *quasi* judicial, or, more accurately speaking, legislative, requiring the exercise of judgment as to the time when, and the mode in which it shall be undertaken, the claims of the respective localities as to order of commencement, when it cannot be effected at once, and the best plan which the means at the disposal of the corporation renders it practicable to adopt, it follows, upon legal principles, that the corporation is not liable to a civil action for wholly failing to provide drainage or sewerage, nor probably for any defect or want of efficiency in the plan of sewerage or drainage adopted; nor, according to the prevailing view, for the insufficient size or want of capacity of gutters or drains for the purpose intended; that is, for carrying off surface water, particularly if the adjoining property is not in any worse position than if no gutters or drains whatever, had been constructed." This is the rule which has been adopted by this court. *Van Pelt v. City of Davenport,* 42 Iowa, 308; *Hoehl v. City of Muscatine,* 57 Iowa, 444 (10 N. W. Rep. 830); *Powers v. City of Council Bluffs,* 50 Iowa, 201; *Ferguson v. Davis County,* 57 Iowa, 608 (10 N. W. Rep. 906). To the section just quoted from Dillon, it is important to note that the author, in the last edition of his work, added the following: "So the text substantially stood in the previous editions. We now add, that the later cases tend strongly to establish, and may, we think, be said to establish, and in our judgment, rightly to establish, that a city may be liable on the ground of negligence in respect of public sewers, solely constructed and controlled by it, where, by reason of their insufficient size, clearly demonstrated by experience, they result, under ordinary conditions, in overflowing the private property of adjoining or connecting owners,

with sewerage, and that the principle of exemption from liability for defect or want of efficiency of plan, does not, as more fully stated below, extend to such a case." In other sections of his work, the author also attempts to distinguish between drains constructed as a part of a street improvement, to carry off and dispose of surface water, and common or public sewers, constructed to provide for and dispose of the sewage of cities; contending for the doctrine, that in the former case there is no liability, if experience proves the plan to be defective, while in the latter case the city must respond on the ground of public policy. The general rule to which we have referred, and which was adopted by this court, more than twenty years ago, seems to be supported by abundant authority. *Vide Hession v. Mayor, etc.,* (Del. Super.) (27 Atl. Rep. 830); *City of Atchison v. Challis,* 9 Kan. 603; *Steinmeyer v. City of St. Louis,* 3 Mo. App. 256; *Mills v. City of Brooklyn,* 32 N. Y. 489; *Darling v. City of Bangor,* 68 Me. 108; *Fair v. City of Philadelphia,* 88 Pa. St. 309; *Child v. City of Boston,* 4 Allen (Mass.) 41; *Merrifield v. City of Worcester,* 110 Mass. 216; *City of Terre Haute v. Hudnut,* 112 Ind. 542 (13 N. E. Rep. 686); *Dermont v. Mayor, etc.,* 4 Mich. 435; *Henderson v. City of Minneapolis,* 32 Minn. 319 (20 N. W. Rep. 322); *Johnston v. District of Columbia,* 118 U. S. 19 (6 Sup. Ct. Rep. 923); *City of Denver v. Capelli,* 4 Colo. 25; Elliott, Roads & S. pp. 365-367, and cases cited. Some courts have attempted to ingraft exceptions upon this rule. For instance, in Maryland it is held that any particular plan that may be adopted must be a reasonable one. *Hitchins v. Mayor, etc.,* 68 Md. 100 (11 Atl. Rep. 826). Again Valentine, J., in writing for the Kansas court, said in the case of *Gould v. City of Topeka,* 32 Kan. 485 (4 Pac. Rep. 827), involving liability for injuries resulting from a defective street: "After a careful consideration of this entire

question, we have come to the conclusion that where
a street, as planned or ordered by the governing board
of a city, is so manifestly dangerous that a court, upon
the facts, can say as a matter of law, that it was dan-
gerous and unsafe, the rule contended for by the
defendant should not have any application, and the
city should be held liable; but where, upon the facts,
it would be so doubtful whether the street as ordered
or planned by the governing board of the city was
dangerous or unsafe or not, that different minds might
entertain different opinions with respect thereto,
the benefit of the doubt might properly be given to
the city, or, rather, to its governing board that planned
or ordered that the street should be placed in such a
condition; and the rule should be held to apply, and
the city should not be held liable." Again, a distinc-
tion has been attempted to be drawn by the Supreme
Court of Indiana in the case of *City of North Vernon
v. Voegler*, 103 Ind. 314 (2 N. E. Rep. 821), between
those cases where the defect arises from a mere error
of judgment and cases where the defect arises from
negligence in devising or adopting the plan. Other
courts have thus stated an exception: "For a mere
error of judgment on the part of the officers of a
municipality, not so gross as to support the inference
of imbecility, or willful inattention, a city is not
answerable, though as a result of such error public
works are constructed from which injury results to
persons or property." See note to *Chalkley v. City of
Richmond* (Va.) (29 Am. St. Rep. 737, 738, and 14 S. E.
Rep. 339). It is manifest that the instructions we
have quoted does not follow any of these excep-
tions to the general rule. It, in effect, makes
the defendant liable for damages resulting from
a mistake in judgment as to the sufficiency of the
plan, notwithstanding there was no negligence either
in devising or adopting it. We do not wish to be

understood as approving of any of these exceptions. We refer to them simply to show that, conceding any or all of them to be correct, yet the instruction cannot be sustained. One other exception to the general rule may be stated. It is found in Judge Dillon's work, to which we have heretofore referred as sections 1051, 1051a. He states it thus: "There will be a liability if the direct effect of the work—particularly if it be a sewer or drain—is to collect an increased body of water, and to precipitate it or sewage on private property, to its injury." But, he continues, "since surface water is a common enemy, which the lot owner may fight by raising his lot to grade, or in any other proper manner, and since the municipality has the undoubted right to bring its streets to grade, and has as much power to fight surface water in its streets as the adjoinining private owner, it is not ordinarily, if ever, impliedly liable for simply failing to provide culverts or gutters adequate to keep surface water off the adjoining lots below grade, particularly if the injury is one which would not have occurred had the lots been filled so as to be on a level with the street." He cites in support of the rule *Weis v. City of Madison*, 75 Ind. 241, and *Seifert v. City of Brooklyn*, 101 N. Y. 136 (4 N. E. Rep. 321). This exception is founded on the well-known rule that one cannot collect surface water in a body and discharge it upon his neighbor at a place where it would not otherwise have gone. Does the instruction in the case at bar come within this exception, conceding it to be a correct proposition of law? We think not. *First*, because the instruction is not predicated upon such a theory; *second*, because the case was not tried upon this theory in the court below; *third*, because the limitations upon this exception to the general rule of law were not preserved in the instruction given by the court. There was

evidence tending to show, that the natural drainage of the surface water was toward plaintiff's property, and that, if there had been no sewer, the water would have run down just as it did. There was also evidence to the effect, that the natural drainage of the territory north of plaintiff's property, was down Wall street and Mississippi avenue, toward plaintiff's property, and that the defendant did not accelerate the flow, nor did it collect the surface water and discharge it upon the defendant. There was also evidence tending to show that, if plaintiff's property had been brought up to grade, and an area way, which was left at the front of the building, had been filled up, the flooding of plaintiff's property would not have happened. The sixth instruction holds defendant to liability for the insufficiency of the sewer, without any limitations whatever. This was manifest error, for it was a fair question for the jury to determine, whether there was such a direct invasion of the plaintiff's property rights as to entitle them to recover; and the mere fact that experience had proven the sewer insufficient, would not of itself make the city liable.

II. The allegations of negligence on which plaintiff relies have been heretofore set out. It was claimed by defendant that the overflow was due not to the insufficiency of the drain or catch basin, but to the temporary clogging of the catch basin during a severe storm, of which, from the very nature of the case, it could not possibly have had notice in time to have prevented the accident; and it asked an instruction to the effect that, if the jury found the temporary clogging of the catch basin was the approximate cause of the overflow of the surface water, and they further found that the city was not negligent in the construction of the catch basin, then the city would not be liable, unless they found further that it had sufficient notice of such clogging to have

enabled it to remove the material from the basin before the injury to plaintiff's property occurred. This instruction should have been given. *Smith v. Mayor, etc.,* 66 N. Y. 295; *Rowe v. Portsmouth,* 56 N. H. 291. Nothing of like import was given by the court. Indeed, defendant's duty and liability, as announced in the sixth instruction, was in no manner qualified or limited. Under the rule there given, it was negligence for the city to allow the drain or sewer to remain after it had notice of its insufficiency, although it may have been guilty of no negligence in constructing it. The error of the court in refusing the instruction asked, becomes the more apparent when the evidence is considered. All there is tending to show insufficiency in the size of the inlet and drain is the fact that some months before the time of the overflow, the catch basin or inlet became clogged, and the water ran down Front street, and in front of plaintiff's property. It was also shown that after each rain the defendant cleared out this catch basin, as it did others, removing therefrom sticks, stones, leaves, and other debris. It was claimed by the city, and it introduced evidence tending to show that the catch basin, sewer, and drain were ample in size and capacity to carry all the water which could possibly fall upon the territory drained, and that the overflow complained of was due to an unusual and extraordinary fall of water, which caused leaves, sticks, stones, and other refuse matter to be washed down to and to cover the inlet to the drain or sewer; that it had no reason to anticipate this obstruction to the flow of the water, and did not know of it until after it had occurred. The city also produced some evidence to show that, as soon as the debris was removed from the inlet to the sewer, it was ample in size to, and did carry off the water. Defendant's theory of the case was not presented to the jury, for the reason that the

learned district judge who tried the case was of the opinion that the city was liable for the insufficiency of the drain, no matter whether due to inadequacy of size in original construction, or to the collection of debris, provided, of course, that the city had notice of such insufficiency in time to have corrected it before the damages to plaintiff's property was done.

III.    We are not to be understood as holding that the city is in no case liable for injuries occasioned by insufficiency of plan of its improvements.    In the case of *Freburg v. City of Davenport*, 63 Iowa, 119 (18 N. W. Rep. 705), we in express terms approved of the exception made to the general rule announced by Judge Dillon, and held, in effect, that where the direct effect of the work was to collect an increased body of water, and to precipitate it upon private property, to its injury, the city was liable, provided, the individual suffering the damage had brought his lot to grade.    But in such case it is not the failure to construct sufficient sewers to carry off the water which is the gravamen of the charge.    It is the positive act of casting water upon the premises by the sewer already constructed, which constitutes the tort.    To make the defendant liable in this case then it must be shown that the city committed a trespass upon the plaintiff, or that it created a nuisance of which it may complain.    It is not enough to show insufficiency of the plan adopted, or inadequacy of the drain and sewer as constructed to perform it work.    Plaintiff must also prove that its injuries were the direct result of a corporate act which is in the nature of a trespass upon its property.    But, as plaintiff's property was below grade, it cannot recover if the overflow would not have occurred had the lots and the areaway around the property been filled so as to be on a level with the street.    *Freburg v. City of Davenport, supra; Gilfeather*

*v. Council Bluffs*, 69 Iowa, 310 (28 N. W. Rep. 610); *Morris v. City of Council Bluffs*, 67 Iowa, 343 (25 N. W. Rep. 274); *Hoard v. City of Des Moines*, 62 Iowa, 326 (17 N. W. Rep. 527); *Phillips v. Waterhouse*, 69 Iowa, 199 (28 N. W. Rep. 539). The rule we have attempted to announce, and the distinctions we have tried to draw between cases where there is liability because of some direct invasion of the property owner's rights and cases where his damages are merely incidental to an improper exercise on the part of the city, of its legislative, or judicial functions, is admirably stated by Judge Cooley in the case of *Ashley v. City of Port Huron*, 35 Mich. 296, to which reference is made. Also, see *Seifert v. City of Brooklyn*, 101 N. Y. 136 (4 N. E. Rep. 321); Wood, Nuisance, section 752. Reference to these rules has been made in order that there may be no misunderstanding of our views, if the case should again be brought to trial.

IV. Some other questions are discussed by counsel. These need not be referred to, for some of them are covered by what has already been said, and others will not arise upon a retrial. For the errors pointed out, the judgment of the district court is REVERSED.